Darrell C. DONALDSON, Jr., Appellant,

v.

Jimmie R. MANSEL et ux., Appellees.

No. 17766.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 1980.

Rehearing Denied Jan. 29, 1981.

William W. McNeal, Austin, for appellant.

Helm, Pletcher & Hogan, John W. Odam, Houston, for appellees.

Before COLEMAN, C. J., and WALLACE and DOYLE, JJ.

COLEMAN, Chief Justice.

This is a suit to set aside a foreclosure sale made under the authority of a deed of trust. The case was tried to a jury, and the judgment was entered for the plaintiffs. Only Darrell C. Donaldson has appealed.

There is evidence that Jimmie Mansel and his wife purchased the house in question in this case from Donald Peck and his wife. As part of the consideration for said house the Mansels executed a note in the principal sum of $2,000.00 which was secured by a deed of trust. In addition they made a cash payment of $8,600.00 and assumed the balance of $21,336.24 due on a note executed by the Pecks which was secured by a first lien on the property, as well as by a deed of trust.

After the Mansels entered into possession of the house, they discovered certain defects which they contend constituted a breach of warranty on the part of the Pecks. After making at least one payment the Mansels quit making payments on the second lien note. The Mansels and the Pecks were unable to resolve the dispute, and each employed attorneys to represent them. The lawyers also failed to resolve the dispute and on September 2, 1975, Ben B. Floyd, substitute trustee, held a foreclosure sale under the deed of trust and sold the property to Darrell C. Donaldson, Jr. Seven days after the sale the Mansels brought this suit against Floyd, Donaldson, and the Pecks to set aside the sale and for damages.

On September 13, 1976, the Mansels paid to Donaldson, in conformity to a court order, the following sums of money:

1. $2,470.00 being the amount defendant Donaldson paid to the substitute trustee, Ben F. Floyd, at the foreclosure sale held on September 2, 1975;

2. $2,640.00 being the total amount paid by defendant, Donaldson, to Foster Financial Corporation, the first lien holder, on the outstanding first lien on the property;

3. $750.00 as attorney's fees to Donaldson's attorney of record, Will G. Dickey;

4. 9% interest on the $2,470.00 from September 2, 1975 to date, said sum being $166.00;

5. 9% interest on the installments made on the first lien by defendant Donaldson, said sum being $74.00.

The judgment ordered that the substitute trustee's deed conveying the property to Donaldson be canceled and set aside; that the second lien note executed by the Mansels payable to the Pecks, together with the deed of trust securing said note, be canceled; that the title and possession of the property, as described in the judgment, be vested in the Mansels and divested out of the Pecks and Donaldson; that the Mansels recover judgment from the Pecks in the amount of $2,536.24, plus interest from the date of the judgment; and that the costs of court be paid by the defendants Donald W. Peck, Jr. and wife, Carolyn R. Peck, and Darrell C. Donaldson, Jr.

By his first point Donaldson asserts that the trial court erred in rendering judgment setting aside the foreclosure sale because the uncontroverted facts indicate that there were no irregularities in the conduct of the sale and the price obtained was not grossly inadequate as a matter of law.

The Peck deed of trust provides:

... If default be made in payment of said note or any installment of principal or interest ..., the unpaid principal sum of money herein secured may, at the option of the holder of the note hereby secured and without notice, be declared due and payable at once, and the holder of the note secured hereby, his agent or the trustee herein shall have the right to take immediate possession of said property ..., and thereupon, the said trustee is hereby further authorized and empowered to sell the property hereby conveyed, with or without first taking possession thereof, at public auction, ... on the first Tuesday in any month after default as aforesaid, after giving notice of the time, place and terms of sale and the property to be sold by posting written or printed notices thereof for three consecutive weeks prior to the date of sale....

The deed of trust, additionally, contains a stipulation that in case of any sale under the deed, all prerequisites to said sale shall be presumed to have been performed and that recitals of statements of fact in the trustee's deed shall be prima facie evidence that the facts so stated are true.

The second lien note provides that if any installment of principal or interest is not paid when due, at the election of the legal holder thereof, at any time thereafter made, the unpaid balance of the principal sum with all accrued interest may by the holder be declared immediately due, without notice, and may be collected forthwith by sale under said deed of trust. The note also contains the following provision:

The makers and endorsers severally waive presentment, protest and demand, notice of protest, demand and of dishonor and non-payment of this note, and expressly agree that this note, or any payment thereunder, may be extended from time to time without in any way affecting the liability of the makers and endorsers hereof.

Since there is no evidence to the contrary, we presume that the note was accelerated prior to posting and that notice of the trustee's sale was properly posted. Some two days after posting, a written demand for payment was made on the Mansels. The acceleration clause in the second lien note left it optional with the holder whether he should declare the entire amount due upon failure to pay an installment of the principal or interest. There is a line of cases that hold in such an event the holder must present the note for payment prior to exercising his option to declare the entire note due and payable. *Allen Sales and Servicenter, Inc., v. Ryan*, 525 S.W.2d 863 (Tex.1975); *Purnell v. Follett*, 555 S.W.2d 761 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ). However, because of the express waiver provision in the note no demand for payment is necessary here. *Pruske v. National Bank of Com-*

**802**

*merce of San Antonio*, 533 S.W.2d 931 (Tex. Civ.App.—San Antonio 1976, no writ).

The jury found that the sale was not fairly conducted. The appellant contends that there is no evidence, or in the alternative, insufficient evidence, to support this finding. The appellees assert that the finding is supported by the fact that the Pecks had no intention to foreclose. Mr. Peck testified that he authorized Mr. Floyd, his attorney, to take whatever action was necessary to collect the money. He testified that Mr. Floyd called him and told him what his plan was and he agreed to the plan as a way to get something done. The substance of Mr. Peck's testimony was that he authorized the procedure followed by the substitute trustee with the expectation that by following this course of action Mr. Floyd would be able to work the matter out with the attorney for the Mansels. He testified that it was his intention by this procedure to collect the balance due on the second lien note. This testimony does not rebut the presumption that the sale was legally conducted. Neither the Mansels nor Mr. Donaldson knew anything of this conduct prior to the sale. The Mansels had actual knowledge of the date on which the sale was to be conducted. The testimony of Mr. Peck does not support the finding that the sale was not fairly made.

The appellees cite the fact that there was only one bidder on the property. Mr. Donaldson, who was told by the substitute trustee some of the details of the sale prior to the date of the sale. Mr. Donaldson then visited the property, contacted the holder of the first lien note, and traveled to Angleton with the substitute trustee to attend the sale.

In *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473 (Tex.1965), the court considered a case where the substitute trustee, as an officer of the mortgagee, requested another employee of the mortgagee to attend the sale and bid a specified sum on behalf of the mortgagee. The Supreme Court held that this fact did not constitute an impropriety on the part of the trustee and did not invalidate the sale.

It is well settled that the mortgagee or his attorney may act as the trustee under a deed of trust and become a purchaser at a sale which he conducts. *Thornton v. Goodman*, 216 S.W. 147 (Tex.Civ.App. 1919, jdgmt. adopted). The fact that Mr. Donaldson learned of the sale from the substitute trustee is not evidence of an impropriety on the part of the trustee.

It has been held that the fact that negotiations were pending for renewal of an indebtedness at the time of the trustee's sale does not constitute such an irregularity as will warrant a setting aside of a sale under a deed of trust. *Sparkman v. McWhirter*, 263 S.W.2d 832 (Tex.Civ.App.—Dallas 1954, writ ref'd).

The appellees also assert that the consideration received for the land at the trustee's sale was grossly inadequate. The appellants had made a $8,600.00 down payment a relatively short time prior to the trustee's sale. It is a manner of common knowledge that during the period of time from the date on which the Mansels purchased the property to the date of the trustee's sale the market value of real estate was increasing because of inflation. These facts might support a finding of a grossly inadequate consideration despite the fact that there was no expert testimony concerning the value of the premises on the date of the trustee's sale. However, before a trustee's sale will be set aside because of grossly inadequate price there must be evidence of an irregularity, though slight, which caused or contributed to cause the sale at a grossly inadequate price. *American Savings and Loan Association of Houston v. Musick*, 531 S.W.2d 581 (Tex.1975). There is no evidence of even a slight irregularity which caused or contributed to cause the sale of this property at a grossly inadequate price. The appellants' points 1 through 4 are sustained.

Under the terms of the deed of trust and under the undisputed facts, the substitute trustee's sale to Darrell C. Donaldson, Jr., was valid. The trial court erred in setting the sale aside and judgment is here ren-

dered that the plaintiffs, Jimmie R. Mansel and wife, Imogene Mansel, take nothing insofar as their suit seeks to set aside, vacate and have declared void, the foreclosure sale of, and substitute trustee's deed to, the real estate at issue described as:

> Lot 12, Block 3, Clearcreek Manor, Abstract 544, Brazoria County, Texas, according to may recorded in Volume 8, Page 31, Plat Records, Brazoria County, Texas.

However, that portion of the judgment decreeing a cancellation of the second lien note executed by Mr. & Mrs. Mansel in the principal sum of $2,000.00 payable to Mr. & Mrs. Peck together with the deed of trust securing same, and the judgment in favor of Jimmie R. Mansel and wife, Imogene Mansel, and against the defendants, Donald W. Peck, Jr. and wife, Carolyn R. Peck, in the amount of $2,536.24 plus interest is affirmed. The costs in the trial court are adjudged against Donald W. Peck, Jr. and wife, Carolyn R. Peck. The costs of appeal are adjudged against Jimmie R. Mansel and wife, Imogene Mansel.

As of the date of the trial the Mansels had been in continuous possession of the property in question since the date of foreclosure. The jury found that the premises had an average monthly rental value from that date until the time of trial of $400.00 per month. The appellant is entitled to recover the reasonable rental value of the premises during the time he has been deprived of possession. *Criswell v. Southwestern Fidelity Life Ins. Co.*, 373 S.W.2d 893 (Tex.Civ.App.—Houston 1963, no writ). Appellees should be given credit for the sum of $6,100.00, previously paid to appellant under court order. In addition they should be given credit for additional amounts expended on the first lien note. The cause will be remanded to the trial court for entry of a judgment in accordance with this opinion.

The judgment of the trial court is affirmed in part, reversed and rendered in part, and the cause is remanded to the trial court for entry of judgment.